Next case is International Controls and Measurements v. Honeywell, 12-15, New York, USA. We're here today because the Board fundamentally misunderstood the invention of the 719 patent. And that fundamental misunderstanding led to the claim construction, which is wrong  The 719 patent calls for a coil that serves two different functions. One of those functions is the accumulation of voltage for ignition. And a different, separate function is to power on, or to use a phrase in the specification, switch on, another component of the furnace that is necessary for the furnace to start. There is no evidence in this record of any prior art with a coil that serves those two different functions. What is the best support that you have in the specification for the assertion that you just made, that the purposes are to accumulate voltage and to power on another component? I'll begin to answer that question with Figure 1. Well, let's look at the written specification first. I'm curious whether there's anything there that alludes with any specificity to this other component. I'll start at Column 3, approximately lines 50 to 52 or so. Here an inducer relay actuator coil, 12, is employed for switching on an inducer motor, not shown. And then it continues on. This coil is in series with a switching transistor and a microprocessor, square wave gating pulses, and it carries on to the flyback diode. And that is all the function of the accumulation of voltage for ignition. So that we know is present all through the specifications, the accumulation of voltage. But where is the other function other than ignition? It is in the use of the coil, which is also used to actuate the furnace. But where is that laid out in the specification? Let me go to Column 2. According to one aspect of this invention... What line are you reading? I'm sorry, line 1. According to one aspect of this invention, an igniter circuit for a gas burner employs pulsating current to a relay coil, such as the relay coil for the inducer motor. That's the one purpose, to actuate the furnace, being the inducer motor. And that coil is used... The inducer motor is alluded to, but no functions are associated with it, right? In the specification, an inducer motor, and in Figure 1 with the inducer relay, is one of the components that must be activated to start a furnace because you must have air, combustible air, and you must have exhaust before you would start a flame. Now, that is in the... The fact of the inducer relay being actuated by the coil is, as I'm describing, in the specification. Now, in the record before the Board, our expert also explained in Paragraph 27 of his declaration that there are necessary things that must happen in order to start a furnace, and ignition is the last of those steps. You must have combustible air and exhaust, the function of the inducer motor. Hence, Figure 1 shows the inducer relay and that embodiment. You must have the integrity of the flame-sensing circuit confirmed so that you will know if there is just gas passing through the building or flame. You must have the gas valve turned on. And finally, you must have an arc or spark to ignite the flame. Do you think that if you accused a product that did not have the inducer motor that performed the actuation as you view it, other than ignition, that that would infringe Claim 1? We agree. I think the answer... I have two aspects to respond to your question, Your Honor. First, we agree that if the accused device only used the coil for actuation only... Well, I'm thinking ignition. Only used the coil for ignition. Only used the coil for ignition, that would not be infringing because this claim is limited by a coil with two purposes. My second part of my answer to your question is that the language of the claim is and, and we must give meaning to the conjunctive, in which pulsating current is applied to a coil in order to actuate the furnace. So I'm not limiting the scope of the claim to only the preferred embodiment where it is the inducer motor that is actuated in order to start the furnace, in addition to the function of ignition. When the claim is construed properly, in our view, to be limited to a coil that serves these two functions, then we look to whether there is any evidence in the record of prior art with a coil serving those two functions. I submit there is none. Consequently, this Court should determine, I submit, that as a matter of law, Honeywell did not carry its burden to prove by a preponderance of the evidence that the 719 patent is invalid. As a consequence, there's no reason to remand, and the result that we request is the declaration of the proper claim construction, and given the absence of any evidence of a coil serving a second function, the 719 patent is not invalid. The PCAS said that it appeared to them that the two purposes for the coil that you referred to, they appeared to just simply overlap. Was this an observation due to the construction that they gave? It's a consequence of their construction. It's not a construction that was argued before the Board at the time. It's not a construction that Honeywell advanced or that, obviously, that we advanced. But it is a consequence of their construction. And I might say, or I might put it this way. They construed the claim so broadly that under these claims of this patent, the only function of the coil is ignition. Or they construed the same thing in a slightly different way. They construed the claims so broadly that everything boiled down to ignition. So when you look at the language of the claim, the Board's interpretation of the claim is very consistent with the following. All the claim has to say is an igniter circuit in which a flame starts in the burner comprising then the body of the flame carries through with the coil and the actuation of accumulation of voltage. So that the language of the claim, and in which pulsating current is applied to a coil in order to actuate the furnace, is completely redundant. It's meaningless under the Board's interpretation. Similarly, and when we look at Figure 1, there's no purpose served in Figure 1 to show an inducer relay, which is in that embodiment what receives the pulsating current from the coil in order to actuate the furnace. It would have been sufficient for Figure 1 to only show the right-hand side where there's the igniter. But that's not what 719 claims. It's limited by a coil that serves those two functions. The only thing as I understand it in Figure 1 that isn't integral to the igniter function is the reference to the inducer relay. Is that right? Everything else is necessary to make the igniter function operate as the claim requires. Exactly. So there's that one unnumbered element there, inducer relay. Yes, and so what we have is one of the values, one of the benefits of this invention, is this invention takes a furnace control that uses a coil, 12, to, in this embodiment, induce the inducer motor, the inducer relay. That's there. And then this invention takes that same coil and applies it for the accumulation of voltage for ignition. Not only does it use a single component for two purposes, one benefit, then the specification, as you know, describes the benefits that follow  in the absence of a booster transformer, the lower turns ratio on the step-up transformer. If I might turn, then, to the evidence that's in the record. The board instituted on Puryear and Potts and no other, and Honeywell's evidence at the board is only directed to the ignition function and nothing else. Its expert testimony is only directed to the ignition function and nothing else. So when we were at the hearing... Would you agree that Courier would render invalid a claim that did not have the inducer relay? Subject to my qualification about inducer relay being an embodiment, as opposed to all possible ways and other necessary things for actuating a furnace, if the claim is construed as the board construed it, Courier invalidates 719 patent. Okay. All right. And you don't have to look at Potts. Potts is not pertinent. Okay. If that answers your question. It does. Thank you. You can clear something up for me that has been kind of in the back of my mind. It seems to me that the PTAP may have conflated activate with actuate. Am I wrong with that? The PTAP, yes. Well, yes and more. I am wrong or yes they are? No, you are right for additional reasons. They took the definition of actuator. Actuator is not part of the claim in any regard. They then took that definition of actuator and applied it to the verb to actuate. Then they took the definition of actuator, which is an electrical energy that causes a mechanical action, some physical movement. And then they applied that definition in a way that is nonsensical to the claim because they applied it to the discharge of the accumulated voltage. They applied the definition of actuator, which requires a physical output of mechanical motion by their own definition. They applied it to the discharge of the energy itself, to which the definition, under the definition that the board chose, that is not an actuator. Now, a relay, like the inducer relay, that would be an actuator, but that's not specifically part of the claim. So that's a longer-winded way of saying what the board did with the terms to the term actuator for construing the verb to actuate. And I frankly don't think all the dots ever line up on that, but the core problem of the board, and I submit, was to render the claim language and in which pulsating current is applied to a coil in order to actuate the furnace out of the claim. I guess there are a number of steps that would be necessary to actuate a furnace, right? There are. So you could have many candidates actuating. Well, it's a limited number of candidates, but there are more than one, I think. Wouldn't you agree, though, that one of the four or five actuating steps would be ignition of the flame? In our common parlance, Your Honor, I would. But if you look at the specification, the words actuator or to actuate is never used in conjunction with the accumulation of voltage for ignition. It is never used in that way. Actuation, to actuate the furnace in the specification, is always used in conjunction with an inducer relay or a gas valve relay. It's always used for this second function. So if we're going to be true to the language of the specification and the claim, then the board's construction is not a reasonable one. Counsel, you've mostly consumed your rebuttal time, but we'll give you two minutes. All right, thank you, Your Honor. Mr. Vogel. Thank you, Your Honor. May it please the court. As is clear from the briefing and the arguments of ICM's counsel here today, this case boils down to the preamble of Claim 1 of the patented issue, what extent it's limiting and what it means. I'd like to address two issues in response to ICM's arguments. One is the preamble is partially limiting based on the rationale that the board put forth in its final decision. The court need go no further. To actuate the furnace is not a limitation of the claim under the board's rationale. The second thing I want to address is ICM's tortured construction of the preamble. To actuate the furnace does not make sense in view of the plain language of the preamble or the specification. Turning first to the preamble being partially limiting, if I can draw the court's attention to the board's final decision, which is at Joint Appendix 10, in the middle of the page there, in response or considering Honeywell's arguments regarding the preamble and to what extent it was limiting, the board stated, and I quote, as petitioner correctly notes, two terms in the preamble provide antecedent basis, coil and igniter. Neither party has provided persuasive argument regarding any other reason why we should consider the preamble to be limiting. We therefore determine that the preamble is limiting to the extent it recites a structure that provides antecedent basis to the term said relay coil and the igniter. The board could have stopped there. It need not construe under that rationale to actuate the furnace. And that makes sense. ICM hasn't challenged that finding by the board here today. The issues that it's presented to this court take no issue with the board's finding along those lines with respect to the preamble, and it cannot challenge it here today. The board's conclusions are supported by the general principles that this court applies in the context of determining whether a preamble is limiting or not. Generally, as this court has said multiple times, a preamble is not limiting. There are exceptions to that. One is where it provides antecedent basis. The board decided that only to those two structural aspects of the preamble does it provide antecedent basis, the said relay coil and the igniter. It said nothing about to actuate the furnace. To actuate the furnace does not provide antecedent basis for any other portion of the body of the claim. To actuate the furnace doesn't recite an essential step or structure. We're talking about an apparatus claim here, not a method claim. And the only structural aspects that are necessary and needed from the preamble are those two structural aspects that the board found limiting as requiring antecedent basis. To actuate the furnace is not necessary to give life meaning or vitality to the claim for the same reason that I described. It's merely describing the function of the igniter and the coil to actuate the furnace. It doesn't— Well, of course, that assumes the conclusion that the actuation is the ignition. That's correct. I mean, but if you're not right about that, your preamble argument is separate from your argument on the rest of the merits of what actuating means. If you're wrong about what actuating means, then the argument you just made, it seems to me, is unpersuasive. If I— In other words, what you just said, if I understand you, was that, well, the reason that this language about actuating doesn't contribute anything is because ignition is actuating. But if that's not the meaning of actuate in the context of this claim, then that argument is simply both redundant and according to your opposing counsel wrong. That's correct, but you need to consider not just to actuate, but to actuate the furnace, the full context of that phrase and whether to actuate the furnace includes ignition or excludes ignition as ICM's counsel proposes. Well, ICM's counsel's argument is that in the context of this preamble, it's clear that ignition and actuation are two different steps, and therefore actuation refers to some actuating step other than ignition. So why don't you address why you think that's wrong? Sure, and I think it's best to step back and understand what we're talking about here. If we think about a Venn diagram and the ultimate goal is to actuate the furnace, there's a number of things, as Your Honor recognized, that goes into actuating the furnace. Ignition, making sure there's gas in the system. And in the abstract, that would include ignition, but why in the context of this preamble, the language in this preamble, is that still true, which is to say that actuation, why, in other words, to use your opposing counsel's argument, why isn't the reference to actuating redundant if you're right that it refers to ignition? Because it's merely describing what it is those two structural components that I described, the igniter and the coil, are doing in the system. The whole claim is directed towards ignition and the igniter circuit. It doesn't make sense to try to turn it into something else. Well, put it another way. Let me ask the question this way. The igniter starts a flame in the burner. That is done the way that is described in the claim, the body of the claim, through the coil, the diodes, the zener, and ultimately the transformer. Okay, and then in order to actuate the furnace, it's applied to the coil, in order to actuate the furnace, if we've already got the ignition, why isn't that redundant? It's actually consistent because if you take the latter part of that, the process that we're talking about here, and what this patent is focused on is the use of flyback voltage to generate enough spark, a high enough voltage to generate spark. You have to go from 12 volts to 20,000. Exactly. And several steps to get there. Right, and what this preamble is talking about is that progression. So you're getting pulsating current onto this coil. It's creating a magnetic field that causes a spike in that voltage that can be stored on a capacitor. Once it reaches a certain threshold voltage in order to generate a spark, it sends that voltage to the spark circuit to cause the spark and ignite the flame in the burner as described here. All of which is described in the steps of the claim. So what is added by the language and in which pulsating current is applied to a coil in order to actuate the furnace? It's just describing the overall goal of what's happening with the ignition. Sort of a general precis of what's to follow? That's correct. Okay. Let me ask you one other question then on the same topic. What do you make of the fact that, for example, in Figure 1, we have the circuit which is necessary to perform the function of Claim 1, but we also have the inducer relay which presumably is not necessary to perform the precise ignition function of that claim. What's the inducer relay doing in that figure if the performance of the functions of the inducer relay are not part of the claim? It's certainly well known that you can use an existing coil in a system like they're showing here for some other purpose. That was before the examiner... If you assume that another function can be performed by the coil other than ignition, that the claim would still be invalid, but we're not there. Understood. So what's the inducer relay doing in the diagram? It's providing the voltage for the ignition circuit. No, the inducer relay is not, right? The inducer relay is just the device that on Figure 1 is to the left of the coil. That is picking up current from the coil, right? Fair point, and it's opening and closing the contacts in order to actually... I thought the opening and closing of the contacts was coming from the microprocessor just below the inducer relay with the squared off... isn't it? The microprocessor is causing the pulsating current. It's causing the break in the circuit that causes the pulses, right? Correct, that opens and closes the contacts. So the inducer relay isn't doing that. That's right. Okay. So what's the inducer relay doing if it isn't part of the invention? In the context of Figure 1, it is providing voltage and turning... providing voltage for... if you're talking... are you talking about the inducer relay coil? I'm talking about the device that is immediately to the left of the coil in Figure 1. Right. The coil 12. It's turning the inducer on and off, if that's what your honor is asking. Correct. It's opening and closing those contacts based on that pulsating current to turn the inducer motor on or off. But the inducer... but that is a separate part... that performs a separate function, does it not? The inducer relay is connected to a motor. It's part of a motor that is available to perform other functions, correct? That's correct. Okay. So it suggests that other functions are contemplated to be performed by Figure 1. That's true. Does it not? That's true, but it doesn't play out in the claims. So this, in effect, is... you're saying is sort of an unclaimed feature. Correct.  And if we look at that in the context of the claims, nowhere in the claims does it refer to an inducer relay coil. And ICM, in the claims, knew how to use and specify a particular type of coil when it wanted to. If we look at the patent at JA40, Claim 9, which is in Column 6, right there it refers to a gas valve relay coil. So ICM knew when to refer to a particular type of coil that it was being used for multiple purposes. In the context of any other claim, there's no specificity along those lines, and thus it requires a broader interpretation. The Board was mindful of that when it came to its construction, not to incorporate preferred embodiments or claim limitations into the claim that are not actually claimed or covered by the language itself. I guess your argument would be that they could have amended to include more explicitly the functions performed by the inducer coil and motor? They could have. And I think what's even more telling is the fact that if this is really the genius of the invention, why is it relegated to the preamble? There's nothing in the body of the claims that goes towards this so-called genius or so-called novelty. And it wasn't contested during prosecution. In the face of prior art that was presented by the examiner, ICM didn't talk about this so-called genius to get around the prior art. In fact, it amended the claims. The switching means arrangement so that it was automatically discharged based on a predetermined voltage threshold. Did the examiner in the original prosecution have courier with that? It did not, but it had a Bilsma reference, the Bilsma reference which talks explicitly about using a coil, a fuel injector coil, to not only control the fuel injector but also the ignition circuit. So just turning back to the preamble being partially limiting, that's what the board's rationale leads to the conclusion that the preamble is only partially limiting, and that's consistent with this court's precedent in a number of cases including TomTom, which we cite in our brief at page 35, as well as Loctite, which is cited in TomTom. Both of those cases stand for the proposition that you can have a partially limiting preamble. And in those cases, the court walked through the exact same rationale that the board did here, finding structural aspects to be limiting in the preamble and functional descriptions of those structural aspects not limiting. That's dispositive of all the issues on appeal here. The court need not go further, the board need not go further, and the board's decision can be affirmed on that ground. The other point I'd like to mention is ICM raises these benefits, saying that the benefits are being read out and not considered in the context of this construction. But if I can point the court to JA38, this is the patent again, column 1, starting at line 19. What this patent is talking about is the concern presented in a low-voltage environment, trying to get enough voltage in order to generate a spark in the igniter. And what the prior art did was it used high windings on a coil or a booster transformer. What this patent is directed to is taking those elements out and using flyback voltage instead. There's no connection between a two-purpose coil and those benefits. So even if we consider ICM's construction of two-actuate the furnace doesn't hold water, it's not substantiated by the evidence, and the board got it right and should be affirmed. But even if we go beyond that and consider the context of what we're talking about here, as I described earlier, it was well-known that a two-actuate furnace to use an existing coil in a system like an inducer coil, a fuel injector coil, for actuating another component of the system like an igniter circuit. That was clear in the prosecution, it's clear in Bilsma, and it's also clear in Currier. While ICM takes hyper-technical arguments of Currier about requiring DC power at the flame send circuit, what is undisputed is that coil in Currier, the voltage from that coil is being used for two purposes. It's causing ignition in the igniter circuit as well as powering the flame send circuit. Let me make sure that... Were you finished? Yeah, please. Let me make sure that I didn't misunderstand something you said earlier, and I think in retrospect that I probably did. So let me make sure that I've got it right. I understood you to be saying that the inducer relay was responsible for the switching on and off that causes the flyback voltage by virtue of the disruption of voltage going through the coil. But I thought that it was the microprocessor that is causing the switching, the very rapid switching on and off that creates the flyback voltage. It's the latter that's true, is it not? Correct, it's the microprocessor that's causing the pulsating current. Okay, I misunderstood what you were saying. Yep, precisely. I see I'm out of time. Thank you, Mr. Vogel. Thank you, Your Honor. Mr. Penderaka has a couple of minutes. Thank you, Your Honor. I'd like to start with another answer or a further answer to an earlier question in terms of the specification. At column 1, lines 57 to 61, it is another object to provide an ignition circuit that employs flyback current from a furnace relay coil to develop a primary ignition circuit. It is from the preamble that both of those purposes of this coil is detailed in the claim. The fact that the use of the coil for one purpose of ignition has the various benefits detailed in the specification does not deny the separate fact that the claim requires a coil to serve the second function of pulsating current in order to actuate the furnace. If I may reference the Tom-Tom case, wherein structure in the preamble was limiting, here the language that we're dealing with is and in which pulsating current is applied to a coil in order to actuate the furnace. The coil is structure. Tom-Tom supports our position. All of this argument that we've just heard regarding the preamble not being limiting is a new argument. It was not before the board. The claim construction of the board was not argued before the board. All of the argument... The argument before the board was whether there was sufficient evidence in the record to conclude that the prior art disclosed a two-function coil. And because there was no evidence, we said there is no evidence. Therefore, Honeywell has not carried its burden of proof. The same issue that we have here. So I will conclude by saying counsel said that it is not disputed that the coil of courier powers the flame-sensing circuit. It certainly is. And there is no evidence of Honeywell that supports that position. But just on the question of the preamble and whether the board addressed the preamble issue, I think pages 9 through 11 of the board's opinion address the preamble issue, right? They do, and I think then they want to go on and construe it on 11, and they have to deal with the what does actuate mean. What they're taking on is... So it's not the case that the board didn't... that the issue of preamble, whether the preamble was limiting, was not before the board, right? It was not before the board. But it was before the board, right? Because this is where the board is discussing that very issue. Exactly. They take the phrase and in which pulsating current is applied to a coil in order to actuate the furnace, and they find it limiting, and therefore they construe it. So the issue was before them as to whether the preamble was limiting. Honeywell agreed it was limiting. We agreed it was limiting. They found it to be limiting. And here the argument before this court is that... Well, everybody agrees it's limiting to the extent that it provides an antecedent. The question is is it limiting to the extent that it contains in effect an additional limitation with respect to actuating. Well, one, on the antecedent basis, the antecedent basis for said relay coil is the coil or a coil in the phrase that we're construing. And secondly, when you go to the specification in Figure 1, that is a defining aspect of the invention, to take this existing component that is used in one embodiment for inducing the inducer motor, taking that existing component, keeping that function, that purpose, and using it for a second one of ignition. It is a defining aspect of the invention. Thank you. We will take the case under advisement.